HOME FOR AGED WOMEN *vs.* HENRY C. WILEY & another.

Suffolk.    January 11, 1935. — September 21, 1936.

Present: RUGG, C.J., FIELD, DONAHUE, & QUA, JJ.

*Subrogation. Trust,* Embezzlement by trustee, Trustee's bond. *Bond,* Of trustee. *Surety. Negligence,* In failing to discover embezzlement.

A petition in equity to enforce through subrogation the rights of the beneficiaries of a trust against the surety on the probate bond of the trustee, broken by his embezzlement of assets of the trust, was maintained by the beneficiary of a second trust whose funds the trustee had also embezzled and used toward making good his defalcations in the first trust. Following *Hill* v. *Wiley, ante,* 396.

PETITION IN EQUITY, filed in the Probate Court for the county of Suffolk on March 8, 1933.

The prayers of the petition were substantially the same as those in *Hill* v. *Wiley, ante,* 396.

A demurrer by the surety company to the petition was overruled by *Dolan,* J., and, after hearing on the merits, a final decree for the petitioner was entered. The surety company appealed.

*H. LeB. Sampson,* (*E. A. Howe & A. J. Rockwell* with him,) for the American Surety Company of New York.

*S. H. Babcock,* for the petitioner.

DONAHUE, J.   This is a petition in equity brought in the Probate Court by the Home for Aged Women, a corporation, as assignee of The Winchester Home for Aged Women, which is also a corporation, against Henry C. Wiley, trustee under the will of Daniel Chamberlin, and a surety company which was surety on the bond given by Wiley as such trustee.   The petition alleged among other things the misappropriation of funds by Wiley from the Chamberlin trust and the later misappropriation of money of the home and its use by him in making a distribution to the beneficiaries of the Chamberlin trust;   the allowance of the final account of Wiley as trustee of the Chamberlin trust by a decree which declared that the Chamberlin beneficiaries had no right to receive anything from the surety company on account of certain bonds distributed among them;   an indebtedness of Wiley to the Chamberlin beneficiaries arising out of his breach of the probate bond through the misappropriation of funds; and that the petitioner should in equity be subrogated to the rights of the Chamberlin beneficiaries against Wiley and the surety company because of the breach of the bond.

The petition was taken as confessed against Wiley.   The surety company filed a demurrer which was overruled.   A judge of the Probate Court who heard the case on the merits filed a "Memorandum of Decision and Voluntary Report of Facts" and entered a final decree ordering Wiley as trustee of the Chamberlin trust and the surety company to pay to the petitioner the sum of $4,650.58 without costs.   The

surety company appealed from the decree overruling the demurrer and from the final decree. All the evidence was reported.

The judge found the following facts. . The respondent Wiley was treasurer of The Winchester Home for Aged Women (hereinafter to be described as the Home) from January 10, 1924, to November 3, 1930. He was a trustee of the Chamberlin trust since June, 1920, and from January 25, 1929, was its sole surviving trustee. On February 5, 1930, Wiley as treasurer of the Home drew upon its account a check for $9,000 payable to the estate of Daniel Chamberlin, which check he deposited in the bank account of the Chamberlin trust. Nothing was received by the Home in return for the check. Nothing on the books of the Home had any reference to the Chamberlin trust and the $9,000 item did not appear in any form on its books. On February 6, 1930, Wiley drew three checks, each for $7,500, on the account of the Chamberlin trust, signed by him as surviving trustee of the Chamberlin trust, one payable to each of the three beneficiaries of the Chamberlin trust, and delivered the checks to the beneficiaries on account of their distributive shares in the trust fund.

The judge found that Wiley stole from the Home the $9,000 represented by the check dated February 5, 1930, to make good in part his previous defalcations in the Chamberlin trust which prior to the date of the theft of $9,000 amounted to about $90,000, that the total amount of thefts by Wiley from the Home was $138,029 and that $10,000 of this total was recovered by the Home on a $10,000 surety bond given by Wiley as its treasurer and $20,117 was recovered from other sources, leaving the total net loss resulting to the Home from Wiley's thefts $107,912.

Further findings of the judge were that Wiley had been stealing from the Home since 1928; that audits of his books were made annually by a committee composed of two officers of the Home in accordance with its by-laws; and that they did not discover his defalcations although, if they had checked the securities shown on Wiley's books to be on hand, they would have done so and presumably would have re-

moved him from office, and he would not have been in a position to embezzle the $9,000. The judge stated in his "Memorandum of Decision and Voluntary Report of Facts": "Assuming, without deciding, that the auditing committees were negligent and that the Home . . . was bound by the negligence of the respective auditing committees; while it would be clear that it was negligent to its own interest, I am unable to satisfy myself that the negligence, if such it be, had any causal relation to or connection with the prior defalcations of the respondent Wiley from the Chamberlin trust. I cannot find that the conduct of the auditing committees or of the . . . Home, contributed in the slightest degree to that which gave rise to the rights which in this suit the Home now seeks to enforce."

We think that the evidence did not require the judge to find that negligence of the petitioner or its auditing committees caused the defalcations from the Chamberlin estate and that the evidence warranted the findings of fact made by the judge.

The contentions of the surety company are that the evidence did not warrant a finding that there was a misappropriation by Wiley of property of the Chamberlin trust which was made good in part by the use of money of the Home; that the alleged misappropriation by Wiley of funds of the Chamberlin trust, if proved, would not create an immediate indebtedness of the surety company and the distribution to the Chamberlin beneficiaries was not a payment of such an indebtedness; that the Home cannot sustain a claim based on subrogation for the further reason that it does not appear that there has been a termination of all rights of the beneficiaries under the bond; that negligence of the Home is a bar to any claim based on subrogation; and that there is no equity in favor of the Home as against the surety company. These are the same contentions that were made by the surety company in the case of *Hill* v. *Wiley, ante,* 396. As stated in the brief of the respondent surety company the same propositions of law are here involved as in the case of *Hill* v. *Wiley.* That decision governs the decision in the present case.

For reasons stated in *Hill* v. *Wiley, ante,* 396, the interlocutory decree overruling the demurrer and the final decree were properly entered.

*Decrees affirmed.*